# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| VICTOR R. THOMAS, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | No. 2:11-cv-02286-JPM-cgc |
| v. | ) | No. 2:07-cr-20182-JPM-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

## ORDER TO MODIFY THE DOCKET,
## ADDRESSING PENDING MOTION,
## DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
## DENYING CERTIFICATE OF APPEALABILITY,
## CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
## AND
## DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by Movant, Victor R. Thomas, Bureau of Prisons ("BOP") register number 21652-076, who is currently an inmate at the United States Penitentiary Victorville in Adelanto, California. (ECF No. 1.)[1]  For the reasons stated below, the Court DENIES Movant's § 2255 Motion.

---

[1] The Clerk is directed to modify the docket to reflect Movant's current address, which was obtained from the BOP's Inmate Locator, http://www.bop.gov/inmateloc/, and to mail a copy of this Order and the Judgment to him at that address.

I.          **BACKGROUND**

A.      **Criminal Case Number 07-20182**

On June 20, 2007, a federal grand jury returned an eleven-count indictment against Thomas and three co-Defendants, Debra Williams, Ashleigh Carter, and Melissa Willhite.  (Indictment, United States v. Thomas, No. 2:07-cr-20182-JPM-1 (W.D. Tenn.), ECF No. 8 (sealed).)  Thomas was named in Counts one through ten.  Count 1 charged that, from at least on or about June 1, 2005, until on or about June 6, 2007, all Defendants conspired with each other and with others to possess in excess of five hundred (500) grams of a mixture and substance containing a detectable amount of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 846.  Count 2 charged all Defendants, aided and abetted by each other, with possessing in excess of five hundred (500) grams of a mixture and substance containing a detectable amount of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Count 3 charged that, on or about August 28, 2006, Thomas possessed approximately one hundred eighty-five (185) grams of a mixture and substance containing a detectable amount of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  Count 4 charged that, on or about April 10, 2006, Thomas possessed approximately twenty-eight (28) grams of a mixture and substance containing a detectable amount of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  Count 5 charged that, on or about May 22, 2007, Thomas possessed approximately 5.48 grams of a mixture and substance containing a detectable amount of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  Count 6 charged that, on or about June 1, 2007, Thomas possessed approximately twenty-eight (28) grams of a mixture and substance containing a detectable amount of methamphetamine with the intent to distribute, in violation of

2

21 U.S.C. § 841(a)(1).  Count 7 charged that, on or about June 5, 2007, Thomas possessed approximately twenty-eight (28) grams of a mixture and substance containing a detectable amount of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  Count 8 charged that, on or about June 6, 2007, Thomas possessed approximately eleven (11) dosage units of Hydrocodone, commonly known as "Loritab" and "Loricet," with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  Count 9 charged Thomas, a convicted felon, with possession of four firearms on or about June 6, 2006, in violation of 18 U.S.C. § 922(g).  Count 10 charged that Thomas possessed and carried a firearm on or about June 6, 2007, during, in relation to, and in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

The factual basis for these charges is summarized in the presentence report ("PSR"):

4.      According to the investigative file, in 2005, officers with the Shelby County Sheriff's Department Narcotics Unit received information that **Victor Ray Thomas** was a major distributor of methamphetamine in the Memphis area.

5.      In June 2005, Jon Oliver purchased an eight-ball of methamphetamine from "Spook" a/k/a Marc Vandawalker.  Oliver drove Vandawalker to the Studio Six Motel, 4300 American Way, Memphis, TN where Vandawalker met with **Thomas** and purchased a quantity of methamphetamine (amount unknown).  After meeting with **Thomas**, Vandawalker gave Oliver an **eight-ball** of **methamphetamine**.  Vandawalker subsequently asked Oliver to drive Thomas and his girlfriend, Ashleigh Carter, to Little Rock, AR to pick up a car.  Oliver agreed and when they returned to Memphis, **Thomas** gave Oliver **¼ ounce** of **methamphetamine**.

6.      Oliver and **Thomas** became good friends and Oliver stayed at **Thomas'** residence on occasion.  **Thomas** shared the residence with Ashleigh Carter and Oliver had a key to the house.  Oliver purchased **three (3) ounces** of **methamphetamine** from **Thomas** in June 2005.  During the period of time that Oliver dealt with **Thomas**, **Thomas** stored at least **20-30 pounds** of **methamphetamine** in his home.  Oliver sent several thousand dollars via Western Union to California for **Thomas**.  Carter would accompany Oliver occasionally to send money via Western Union.

7.      In or around August 25, 2005, **Thomas** and Carter discussed picking up a girl from the bus station who was transporting a large amount of

3

methamphetamine.      **Thomas** gave Oliver **fourteen (14) ounces** of **methamphetamine** from this shipment.

8.      Later, Oliver made arrangements to sell a portion of the aforementioned methamphetamine to Jackie LNU at Lone Star restaurant, 251 Mt. Moriah, Memphis, TN.   Oliver was accompanied by Steven Ivy and Rayford Pratcher.   When Oliver arrived at Lone Star, Jackie was not present.   Oliver subsequently drove to a convenience store where Pratcher exited the vehicle to purchase a drink.   A police officer pulled onto the scene and Oliver drove off as he, Ivy, and Pratcher all had methamphetamine in their possession.   Oliver returned to the store to pick up Pratcher, at which time **Thomas** drove up in an attempt to retrieve the methamphetamine from Oliver.   However, officers subsequently pulled onto the lot and Oliver was placed under arrest.   **Thomas** drove off when the officers approached Oliver's vehicle.   Officers recovered a total of **186.52 gm** of **methamphetamine** (TNW) and **23.05 gm** of **marijuana** (TNW).

9.      Oliver was released from jail the next day and met with **Thomas**. Oliver owed **Thomas** $3,000 for the methamphetamine that was found during his arrest and they discussed how Oliver would repay **Thomas**.   Oliver needed more methamphetamine to sell in order to repay his debt.   The following day, Oliver and **Thomas** met again and **Thomas** threatened Oliver with a gun.   **Thomas** told Oliver that he would kill Oliver and his family if Oliver "snitched".   Oliver later sold nine ounces of methamphetamine to Jason Shackleford and one ounce to Keith Floyd.

10.      Oliver purchased two airplane tickets for **Thomas** to travel from Memphis to California around the first week of September 2005.   The purchase was to be credited against the $3,000 debt Oliver owed **Thomas**.   Oliver purchased the tickets via a credit card.   **Thomas** subsequently obtained the credit card number and reportedly charged $39,000 on Oliver's card without his permission.

11.      On April 10, 2006, an undercover officer (UC) met with **Thomas** and agreed to purchase on ounce of methamphetamine for $1,300.   **Thomas** fronted the methamphetamine to the UC and the transaction took place at **Thomas'** residence, 2414 Syon Dr., Memphis, TN.   The UC received **27.7 gm** of **methamphetamine** (TNW).

12.      On May 22, 2007, the UC met with **Thomas** at the Neighborhood Wal-Mart, 2856 Hickory Hill Rd., Memphis, TN.   The UC gave **Thomas** $250 and received **4.0 gm** of **methamphetamine** (TNW).

13.      On June 1, 2007, the UC met with **Thomas** at 2414 Syon Dr., Memphis, TN.   The UC gave Thomas $1,500 and received **27.9 gm** of **methamphetamine** (TNW).

4

14.     On June 5, 2007, the UC met with **Thomas** at 2414 Syon Dr., Memphis, TN.   The UC gave **Thomas** $1,500 and received **28 gm** of **methamphetamine** (TNW).

15.     On June 6, 2007, officers executed a search warrant at **Thomas'** residence, 2414 Syon Dr., Memphis, TN. The search revealed the following:

— a FNH .9mm pistol, serial number: 61BMT04626
— a Taurus, .9 mm pistol, serail [sic] number: TUA13773
— a Taurus, .9 mm pistol, serial number: TXH07548
— a Norinco, SKS 7.62x 39 mm assault rifle, serial number: 1839774
— **1.3 gm (TNW) marijuana**
— **1.5 gm (TNW) crack cocaine**
— **5.3 gm (TNW) cocaine**
— a spray can w/ a false bottom that contained methamphetamine residue
— a plastic bag containing suspected methamphetamine in which no controlled substance was detected.
— **11 dosage units of Hydrocone**
— $3,195 cash
— two digital scales

16.     **Thomas** was advised of his rights and agreed to give a statement. **Thomas** stated the guns recovered from his residence belonged to him and his girlfriend, Ashleigh Carter.  **Thomas** advised that the rifle was not registered, but the three handguns were registered to Carter.   **Thomas** stated that he started selling methamphetamine in Memphis in or around February 2006 (It should be noted, this date appears to be incorrect as there is evidence to suggest that **Thomas** was selling methamphetamine as early as June 2005).   **Thomas** stated that his source of methamphetamine was a Hispanic male known as "Na Na" from California. **Thomas** normally met "Na Na" at a horse stable at El Segundo at Figuero in Los Angeles, CA.   **Thomas** originally purchased methamphetamine from Sergio LNU, "Na Na's" middle man, for $6,000 a pound, but eventually started dealing with "Na Na" and the price increased to $12,000 a pound.   **Thomas** reportedly owed "Na Na" $1,500 at the time of **Thomas'** arrest.

17.     **Thomas** stated that he had sold **50 to 60 pounds** of **methamphetamine**, but related that it was hard to estimate as he had sold so much methamphetamine.   **Thomas** received over half of the methamphetamine he sold from "Na Na".   **Thomas** stated his customers included, but were not limited to: "Micha" LNU; Pam LNU of Mississippi; and Joey LNU.   **Thomas** also advised that Marc Vandawalker a/k/a "Spook" was one of his biggest customers prior to his death (Vandawalker was killed by his roommate after an argument).

18.    **Thomas** acknowledged that he knew Dirish Hottiman, but did not sell methamphetamine to Hottiman.  **Thomas** was aware that Hottiman was business partners with an individual who had been arrested, but did not indicate that he personally knew Hottiman's partner (Hottiman's partner was Jason Gipson).

19.    Further investigation disclosed that **Thomas** also distributed methamphetamine to Michael Thompson.  Thompson was arrested after he traveled to Los Angeles with **Thomas**.   Thompson returned with **1½ pounds** of **methamphetamine** while **Thomas** stayed in LA to send another **1½ pounds** to Thompson. Thompson purchased at least **10-15 pounds** of **methamphetamine** from **Thomas**. Thompson sold **Thomas** at least three pistols and routinely traded drugs for guns.

(PSR ¶¶ 4-19.)

Pursuant to a written plea agreement, Thomas appeared before this Court on July 3, 2008, to plead guilty to Counts 1 and 9 of the indictment.  (Plea Agreement, United States v. Thomas, No. 2:07-20182-JPM-1 (W.D. Tenn.), ECF No. 93; Guilty Plea Hr'g Tr., id., ECF No. 98.)  In the Plea Agreement, Thomas acknowledged that "he is pleading guilty because he is in fact guilty of the offenses charged in the Indictment."  (Plea Agreement ¶ 4, id., ECF No. 93.)

The Court conducted a sentencing hearing on December 8, 2008, at which Thomas was sentenced to a term of imprisonment of thirty (30) years, or three hundred sixty (360) months, to be followed by a five-year period of supervised release.  (Min. Entry, id., ECF No. 123; Sentencing

Hr'g Tr., <u>id.</u>, ECF No. 137.)[2]  The United States Court of Appeals for the Sixth Circuit affirmed

Movant's sentence.  <u>United States v. Thomas</u>, 373 F. App'x 538 (6th Cir. 2010).

 **B.** **Civil Case Number 11-2286**

 On April 15, 2011, Thomas filed his pro se § 2255 Motion (ECF No. 1), which raises the

following issues:

 1. "Inaffective [sic] assistance of counsel" (<u>id.</u> at PageID 4); and

 2. "Conflict of Interest" (<u>id.</u> at PageID 5).

In an Order issued on June 22, 2011, the Court ordered the Government to respond to Claim 2.

(ECF No. 2.)

---

 [2]Thomas was sentenced to concurrent terms of thirty (30) years on Count 1 and ten (10) years on Count 9.  The 2007 edition of the <u>Guidelines Manual</u> was used to calculate Movant's sentence. (PSR ¶ 23.)  The Counts were grouped pursuant to § 3D1.2(c) of the United States Sentencing Guidelines ("U.S.S.G.").  The drug quantity for sentencing purposes was the 50-60 pounds of methamphetamine Movant admitted to selling.  (<u>See</u> PSR ¶¶ 17, 24; <u>see also</u> Plea Agreement ¶ 2, <u>United States v. Thomas</u>, No. 2:07-cr20182-JPM-1 (W.D. Tenn.), ECF No. 93 (agreeing that the drug quantity for sentencing purposes was at least fifteen (15) kilograms and that the guideline sentencing range was thirty-eight (38)).)

 Pursuant to U.S.S.G. § 2D1.1(c)(1), the base offense level for a drug offense involving fifteen (15) kilograms or more of methamphetamine is thirty-eight (38).  Thomas received a two-level enhancement for possession of a firearm, U.S.S.G. § 2D1.1(b)(1); a four-level enhancement as an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive, <u>id.</u> § 3B1.1(a); and a two-level reduction for acceptance of responsibility, <u>id.</u> § 3E1.1, resulting in a total offense level of forty-two (42).  Given his criminal history category of VI, the guideline sentencing range was three hundred sixty (360) months to life.

 Thomas was also a career offender under U.S.S.G. § 4B1.1 because he had at least two prior convictions for crimes of violence or controlled substance offenses.  Under U.S.S.G. § 4B1.1(b)(A), the base offense level was thirty-seven (37) and, after applying the reduction for acceptance of responsibility, the total offense level was thirty-five (35).  Thomas was sentenced under § 2D1.1 because it resulted in a higher total offense level.

On July 13, 2011, the Government filed its Response to Defendant's Motion Under 28 U.S.C. § 2255 ("Answer").  (ECF No. 4.)  Movant did not file a Reply.[3]

## II.           THE LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either:  (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."  Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (quoting Mallett v. United States, 334 F.3d 491, 496–97 (6th Cir. 2003)) (internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal.  See Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013).  "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."  Stone v. Powell, 428 U.S. 465, 477 n.10

---

[3]On April 16, 2012, Movant filed a Motion to Correct Sentence Pursuant to FRCrP Rule 35(a).  (ECF No. 7.)  A motion for a sentence reduction under Rule 35(a) is properly filed in the criminal case rather than in a § 2255 proceeding.  The Court will not direct Movant to submit his Motion using the criminal docket number because it is plainly meritless.  Federal Rule of Criminal Procedure 35(a) provides that, "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."  Because the Motion was filed more than 14 days after sentencing, the Court cannot grant a Rule 35(a) Motion even if the other requirements were satisfied (which they were not).  The Motion (ECF No. 7) is DENIED.  The Court will, however, consider the substance of the Motion to be the factual basis for Claim 1, which addresses counsel's failure to object to the calculation of Movant's criminal history points.

(1976).  "Defendants must assert their claims in the ordinary course of trial and direct appeal."

Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996).  This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

Id.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously.  El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); Peveler v. United States, 269 F.3d 693, 698–99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).  Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating that he is "actually innocent."  Bousley v. United States, 523 U.S. 614, 622 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."  Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules").  "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."  Id.  The movant is entitled to reply to the

9

Government's response.  Rule 5(d), § 2255 Rules.  The Court may also direct the parties to provide additional information relating to the motion.  Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." <u>Valentine v. United States</u>, 488 F.3d 325, 333 (6th Cir. 2007) (quoting <u>Turner v. United States</u>, 183 F.3d 474, 477 (6th Cir. 1999)) (internal quotation marks omitted).  "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." <u>Id.</u> (quoting <u>Arredondo v. United States</u>, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks omitted).  Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his recollection of the prior case. <u>Blanton v. United States</u>, 94 F.3d 227, 235 (6th Cir. 1996); <u>see also</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . .").  Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. <u>Pough v. United States</u>, 442 F.3d 959, 964 (6th Cir. 2006).

## III.        ANALYSIS OF MOVANT'S CLAIMS

### A.    Ineffective Assistance of Counsel (Claim 1)

In Claim 1, Thomas argues that his attorney rendered ineffective assistance, in violation of the Sixth Amendment.  Specifically, Thomas asserts, without elaboration, that "I've asked my lawyer to file for relief at sentence [sic] due to an inaccurate # of criminal History Points."  (ECF

No. 1 at 4.)  The Motion does not identify the alleged error and does specify what Movant contends his criminal history score should have been had the error not occurred.

Rule 2(b) of the § 2255 Rules requires, inter alia, that a § 2255 motion "specify all the grounds for relief available to the moving party" and "state the facts supporting each ground." Notice pleading is not permitted in habeas petitions.  Blackledge, 431 U.S. at 75–76; Taylor v. United States, 287 F.3d 658, 661 (7th Cir. 2002) (noting that, while notice pleading is the standard in ordinary civil litigation, "Rule 2(b) departs from Rule 8 [of the Federal Rules of Civil Procedure] by requiring some fact pleading."); Short v. United States, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam); Kidd v. United States, Nos. 1:12-cv-358/1:10-cr-114, 2013 WL 6795977, at *1, 10 (E.D. Tenn. Dec. 20, 2013); United States v. Domenech, No. 1:06-cr-245-2, 2013 WL 3834366, at *2 (W.D. Mich. July 24, 2013); McGhee v. United States, Nos. 1:04-cr-45, 1:07-cv-25, 2009 WL 595994, at *2, *5 (E.D. Tenn. Mar. 6, 2009); Curtis v. United States, Nos. 1:06-cv-140, 1:30-cr-73, 2009 WL 124162, at *8 (E.D. Tenn. Jan. 14, 2009); United States v. Kerr, Nos. 95-80972, 03-72148, 2005 WL 1640343, at *2 (E.D. Mich. July 8, 2005).

The Court declines to dismiss Claim 1 on the ground that it fails to comply with Rule 2(b) because, as previously noted, see supra p. 8 n.3, the Motion to Correct Sentence (ECF No. 7) appears to supply the factual basis for Claim 1.  In that Motion, Movant argues that the PSR miscalculated his criminal history points by failing to take into account a 2010 amendment to the sentencing guidelines, which eliminated the "recency" points in U.S.S.G. § 4A1.1(e).  (ECF No. 7 at PageID 31.)  Therefore, the Court interprets Claim 1 as asserting that defense counsel was ineffective for failing to object to the "recency points" awarded in light of Amendment 742 to the Sentencing Guidelines.

11

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in Strickland v. Washington, 466 U.S. 668 (1984).  To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 687–88.  "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.  The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (citations and internal quotation marks omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.[4]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.  "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding.  Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Richter, 131 S. Ct. at 787–88 (citations and internal quotation marks omitted); see also id. at 791–92 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . .  The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); Wong v. Belmontes, 558 U.S. 15, 27 (2009) (per curiam) ("Strickland does not require the State to rule out

---

[4]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Id. at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id.

[a more favorable outcome] to prevail.  Rather, Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").  Where, as here, a movant contends that his attorney rendered ineffective assistance at a sentencing hearing, prejudice is established where a misapplication of the Sentencing Guidelines increased a prisoner's sentence.  Glover v. United States, 531 U.S. 198, 202–04 (2001).

Thomas is not entitled to relief on Claim 1 for several reasons.  First, the "recency points" had no effect on Thomas's sentence and, therefore, he suffered no prejudice from his attorney's failure to make the objection.  The PSR calculated thirteen (13) criminal history points solely by looking at Thomas's prior convictions.  (PSR ¶ 48.)  Two additional points were added, pursuant to U.S.S.G. § 4A1.1(d), because Thomas committed the instant offense while on parole, resulting in fifteen (15) criminal history points.  (PSR ¶ 49.)  One point was added, pursuant to U.S.S.G. § 4A1.1(e), because Thomas committed the instant offense less than two years after release from imprisonment on a sentence counted under § 4A1.1(a) or (b), resulting in sixteen (16) criminal history points.  (PSR ¶ 49.)  Amendment 742 would, at best, have eliminated the one point counted under § 4A1.1(e), which would have reduced Movant's criminal history points to fifteen (15).[5] Criminal history category VI requires only thirteen (13) criminal history points and, therefore, Amendment 742 would have had no effect on Movant's sentence.

Second, a reduction in Movant's criminal history category would not have affected his advisory guideline range.   Thomas entered a guilty plea to fifteen (15) kilograms of methamphetamine and the Court concluded that the total offense level was forty-two (42).  See supra

---

[5]Amendment 742 did not alter § 4A1.1(d).  See United States v. Galaviz, 645 F.3d 347, 363 (6th Cir. 2011).

p. 7 n.2.  The guideline sentencing range is three hundred sixty (360) months to life for defendants in every criminal history category at offense level 42.  Therefore, Movant cannot establish prejudice.

Finally, Movant was sentenced on December 8, 2008, almost two years before the effective date of Amendment 742.  An attorney does not render ineffective assistance by failing to anticipate future developments in the law.  Lucas v. O'Dea, 179 F.3d 412, 420 (6th Cir. 1999); Alcorn v. Smith, 781 F.2d 58, 62 (6th Cir. 1986) ("[N]onegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel."); Hall v. Bell, No. 2:06-CV-56, 2010 WL 908933, at *25 (E.D. Tenn. Mar. 12, 2010) ("An attorney's failure to anticipate later legal developments generally does not amount to ineffective assistance."); see also United States v. Burgess, 142 F. App'x 232, 240 (6th Cir. 2005) (attorney was not ineffective for failing to anticipate Supreme Court's decision in United States v. Booker); Thornton v. United States, No. 7:05-CR-00029, 2012 WL 3822169, at *6 (W.D. Va. Sept. 4, 2012) (attorney was not ineffective for failing to anticipate Supreme Court's decision in Begay v. United States).[6]

Claim 1 is without merit and is, therefore, DISMISSED.

---

[6]To foreclose the filing of meritless criminal motions, the Court also notes that Amendment 742 only applies to persons who are sentenced on or after November 1, 2010.  It is not retroactive.  Malone v. United States, No. 3:07-cr-070, 3:10-cv-448, 2014 WL 619564, at *5 (E.D. Tenn. Feb. 18, 2014); United States v. Click, Nos. 0:10-CR-1-DLB-1, 0:11-CV-7183-DLB-REW, 2012 WL 6771970, at *11 n.14 (E.D. Ky. Dec. 11, 2012) (report and recommendation), adopted, 2013 WL 65474 (E.D. Ky. Jan. 4, 2013); Grant v. United States, Nos. 2:07-CV-1313, 2:04-CR-161, 2012 WL 870223, at *10 (S.D. Ohio Mar. 13, 2012) (report and recommendation), adopted, 2012 WL 1900627 (S.D. Ohio May 24, 2012).

**B.      Attorney Conflict of Interest (Claim 2)**

In Claim 2, Thomas asserts that his attorney had an actual conflict of interest.  The factual basis for this issue consists of the statement that "Lawrence Kern and the D.E.A. handling this case Chris Vaden had prior legal dealings.  Mr[.] Kern handled an escrow matter for Mr[.] Vaden."  (ECF No. 1 at PageID 5.)  Thomas states that he did not raise the issue on appeal because "[i]t has only become apparent."  (Id. at PageID 6.)

A criminal defendant has a constitutional right under the Sixth Amendment to conflict-free representation by his counsel.  Gillard v. Mitchell, 445 F.3d 883, 890 (6th Cir. 2006) (citing Smith v. Anderson, 689 F.2d 59, 62–63 (6th Cir. 1982)).  To establish a violation of this right, the defendant must show that counsel had an actual conflict of interest.  "An actual conflict, for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."  Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002).  "[I]f the conflict is as to a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation."  Moss v. United States, 323 F.3d 445, 463–64 (6th Cir. 2003).

In this case, Thomas complains that his attorney represented him after representing the case agent on an unrelated matter.  "Successive representation occurs where defense counsel has previously represented a co-defendant or trial witness."  Id. at 459.  "It is more difficult for a defendant to show that counsel actively represented competing interests in cases of successive rather than simultaneous representation."  Id.  "The fear in successive representation cases is that the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information.  Thus, the most common example of an actual conflict of interest arising

15

from successive representation occurs where an attorney's former client serves as a government witness against the attorney's current client at trial." Id. at 460 (citations omitted).

Under Thomas's version of events, there does not appear to be an actual conflict of interest. Thomas contends that his attorney previously represented the case agent on an "escrow matter" (ECF No. 1 at PageID 5), which is a civil matter entirely unrelated to his work for the Drug Enforcement Administration.  It is also noteworthy that Thomas has not provided any support for his assertion that his attorney previously represented the case agent and has not disclosed the source of his information.

The Government has submitted the affidavit of Thomas's trial counsel, Lawrence W. Kern, who states, in pertinent part, as follows:

> Also set forth in the petition under 28 U.S.C. § 2255 filed by Mr. Thomas a complaint of conflict of interest question was proposed.  Mr. Thomas complained that the DEA agent Chris Vaden and I had had prior legal dealings.  Mr. Thomas alleged that I handled an escrow matter for Mr. Vaden.

> As a result of this complaint, I reviewed my case log where all my clients are listed.  I began the case log in [the] late 1970's.  My clerical staff and I were unable to find where Mr. Chris Vaden had ever been a client of mine in any type of civil or criminal matter.

> I maintain a real estate trust account and a general trust account for escrows.  My clerical staff and I reviewed all deposits concerning these two trust accounts for that same period of time and could find no listing for Chris Vaden.

> The only personal contact that I can recall occurring between Chris Vaden and myself occurred during the sentencing hearing when Mr. Vaden testified on behalf of the government and I cross examined him.  Mr. Vaden may also have been present at a proffer session between myself, Mr. Thomas, Mr. Vaden and Mr. Henry.

> Based on my records and my recollection, I have not represented Mr. Vaden in any legal capacity.

(Affidavit of Lawrence W. Kern, Attorney, Concerning Representation of Victor Ray Thomas, sworn to on July 5, 2011, at p. 2, ECF No. 4-1 at PageID 26.)  As previously noted, Thomas did not file a Reply after receiving the Government's Answer and the Kern Affidavit.

Thomas has not come forward with admissible evidence to raise a colorable claim that his attorney labored under an actual conflict of interest or even that he previously represented the case agent.  No evidentiary hearing is required because the Kern Affidavit is uncontradicted.  Claim 2 is without merit and is, therefore, DISMISSED.

Because every issue presented by Movant has been dismissed, his motion pursuant to 28 U.S.C. § 2255 is DENIED.  Judgment shall be entered for the United States.

## IV.        APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b).  No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2) & (3).  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted); see also Henley v. Bell, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require

17

a showing that the appeal will succeed.  <u>Miller-El</u>, 537 U.S. at 337; <u>Caldwell v. Lewis</u>, 414 F. App'x 809, 814–15 (6th Cir. 2011) (same).  Courts should not issue a COA as a matter of course.  <u>Bradley v. Birkett</u>, 156 F. App'x 771, 773 (6th Cir. 2005) (per curiam) (quoting <u>Miller-El</u>, 537 U.S. at 337).

In this case, for the reasons previously stated, the issues raised by Movant lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ.  Accordingly, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.  <u>Kincade v. Sparkman</u>, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  <u>Kincade</u>, 117 F.3d at 952.  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court.  <u>See</u> Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is, therefore, CERTIFIED, pursuant

18

to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith.  Accordingly, leave to appeal in forma pauperis is DENIED.[7]

   **IT IS SO ORDERED,** this 13th day of June, 2014.


          /s/ Jon P. McCalla
          JON P. McCALLA
          U.S. DISTRICT COURT JUDGE

---

[7]If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

19